**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TANGA RESPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV525 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff, Tanga Resper, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. ___")), and both parties have moved for judgment (Docket Entries 10, 16; <u>see also</u> Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum); Docket Entry 18 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of August 25, 2010. (Tr. 170-71.) Upon denial of that application initially (Tr. 71-84, 100-03) and on reconsideration (Tr. 85-99, 111-18), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 119-20). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 42-70), during which Plaintiff amended her onset date to November 28, 2011 (see Tr. 46-47). The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 19-36.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 14-18, 240-41), and Plaintiff filed a Complaint in this Court seeking judicial review of the Commissioner's denial of benefits, see Resper v. Berryhill, No. 1:17CV128, Docket Entry 1 (M.D.N.C. Feb. 15, 2017). The Court subsequently granted the Commissioner's Consent Motion to Remand under Sentence Four of 42 U.S.C. § 405(g), see Resper, Docket Entries 14-16 (M.D.N.C. Oct. 17, 2017) and, in response, the Appeals Council issued an order remanding the case to an ALJ for a new hearing (Tr. 1167-71).

The same ALJ convened a new hearing, which Plaintiff, her attorney, and a VE attended. (Tr. 1080-1125.) Following that hearing, the ALJ ruled that Plaintiff did not qualify as disabled. (Tr. 1030-53.) Plaintiff filed exceptions to the ALJ's decision

2

(Tr. 1070-79), but the Appeals Council deemed them untimely and declined to consider them (Tr. 1062-63), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2015.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her [amended] alleged onset date of November 28, 2011 through her date last insured of December 31, 2015.

. . .

3. Through the date last insured, [Plaintiff] had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the right shoulder; and history of carpal tunnel of the right hand.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work . . . except she can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. She can engage in occasional stooping, crouching, kneeling, and climbing ramps and stairs, and can perform occasional twisting at the waist, but no climbing of ladders. She can frequently perform fingering and handling with her right upper extremity.

3

She can sit for no more than 60 minutes at a time, and stand for no more than 30 minutes at a time.

. . .

6.  Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

9.  [Plaintiff] has acquired work skills from past relevant work.

The [VE] testified that [Plaintiff]'s past relevant work as a Bakery Supervisor was skilled, was classified as having a specific vocational preparation ("SVP") code of 6, and required the following skills: provide information to customers.

10.  Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, [Plaintiff] had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.

. . .

11.  [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from November 28, 2011, the [amended] alleged onset date, through December 31, 2015, the date last insured.

(Tr. 1036-52 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely

4

limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Even given those limitations, the Court should remand this case
for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
"a reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of
more than a mere scintilla of evidence but may be somewhat less
than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th
Cir. 2001) (internal brackets and quotation marks omitted).  "If
there is evidence to justify a refusal to direct a verdict were
the case before a jury, then there is substantial evidence."
Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should
not undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ,

5

as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

adjudicative process, the Social Security Administration has . . .
promulgated . . . detailed regulations incorporating longstanding
medical-vocational evaluation policies that take into account a
claimant's age, education, and work experience in addition to [the
claimant's] medical condition." Id. "These regulations establish
a 'sequential evaluation process' to determine whether a claimant
is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial
gainful activity,' i.e., currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of
specified impairments, or is otherwise incapacitating to the
extent that the claimant does not possess the residual functional
capacity to (4) perform [the claimant's] past work or (5) any other
work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d
473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant
at any of several points in the SEP forecloses an award and ends
the inquiry. For example, "[t]he first step determines whether
the claimant is engaged in 'substantial gainful activity.' If the
claimant is working, benefits are denied. The second step
determines if the claimant is 'severely' disabled. If not,

---

[3] "Through the fourth step, the burden of production and proof is on the
claimant. If the claimant reaches step five, the burden shifts to the
[government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B. Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ erred in her evaluation of Plaintiff's [past relevant work ('PRW')] and transferability of skills to other work." (Docket Entry 11 at 4 (bold font and single-spacing omitted).) More specifically, Plaintiff challenges the ALJ's finding that Plaintiff acquired transferable skills from her PRW as a Bakery Supervisor that enabled her to perform other jobs existing in significant numbers in the national economy (see Tr. 1050-51) on three grounds:  1) "the VE did not testify that there were any transferable skills from the [B]akery [S]upervisor or [F]ront [D]esk [C]lerk positions – the only two positions which the ALJ found to constitute PRW in her decision" (Docket Entry 11 at 5-6 (citing Tr. 1122-23)); 2) "'dealing with the public and providing information to customers' – the skill which the ALJ found transferable to semi-skilled sedentary jobs in the economy – is not a skill, but rather a trait of the job" (<u>id.</u> at 6 (internal

---

[5] A claimant thus can qualify as disabled via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

citation omitted) (citing Tr. 1051)); and 3) although the VE testified that Plaintiff's PRW as a Department Manager provided the transferable skill of providing information to customers, "the VE likely misclassified th[at] work," as "there [wa]s little indication . . . that [Plaintiff] was engaged in providing information to customers" (id. at 8 (citing Tr. 96-97, 205, 1085-86)). For the reasons discussed below, Plaintiff's first subcontention has merit and warrants remand.

At step five of the SEP, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform considering his or her age, education, work experience, and RFC. See Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids) or by calling a [VE] to testify." Aistrop v. Barnhart, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566). "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education,

and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" <u>Black v. Astrue</u>, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), <u>recommendation adopted</u>, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

Grid Rules 201.14 and 201.15 apply to an individual, like Plaintiff, limited to sedentary work, closely approaching advanced age (aged 50-54) during the relevant period, with a high school education (or more) that does not provide for direct entry into skilled work, with skilled or semi-skilled past work experience. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 2, §§ 201.14, 201.15. If that individual acquired "transferable skills" from his or her past work experience, Grid Rule 201.15 applies and directs a conclusion of "[n]ot disabled." <u>Id.</u>, § 201.15. In contrast, if the individual's past work did not result in "transferable" skills, Rule 201.14 deems the individual "[d]isabled." <u>Id.</u>, § 201.14. Thus, resolution of Plaintiff's claim for DIB ultimately turns on whether the ALJ correctly concluded that Plaintiff acquired transferable skills from her previous work experience that enabled her to perform other semi-skilled jobs existing in significant numbers in the national economy. (<u>See</u> Tr. 1051.)

1. <u>Transferable Skills from Bakery Supervisor Job</u>

Plaintiff first faults the ALJ for finding that Plaintiff acquired transferable skills from her PRW as a Bakery Supervisor

11

that enabled her to perform other jobs existing in significant numbers in the national economy, because "the VE did not testify that there were any transferable skills from the [B]akery [S]upervisor or [F]ront [D]esk [C]lerk positions – the only two positions which the ALJ found to constitute PRW in her decision." (Docket Entry 11 at 5-6 (citing Tr. 1122-23, and referencing Tr. 1050-51).) According to Plaintiff, "the VE testified that there was a transferable skill from the [D]epartment [M]anager job which [Plaintiff] had performed in the past[, b]ut [] the ALJ did not find that [the Department Manager] position met the requirements of PRW." (Id. at 6 (internal citation omitted) (citing Tr. 1122-23, 1050); see also Docket Entry 18 at 1-2.)

During the hearing, the following colloquy took place between the ALJ and the VE:

> [ALJ:]     [VE], would you describe [Plaintiff]'s past work, please.
>
> [VE:]     Yes.  Manager, [D]epartment, [Dictionary of Occupational Titles ('DOT')] code 299.137-010, SVP of 7, medium exertional level, performed at light.  Manager, [B]akery, [DOT code] 189.117-046, SVP of 8, sedentary exertion, performed at light.  And [F]ront [D]esk [C]lerk, or could be called [H]otel [C]lerk, [DOT code] 238.367-038, SVP of 4, light exertion, performed at light.
>
> [ALJ:]     Now with respect to the manager of the bakery department at a Walmart, that's clearly not sedentary, and it's clearly not an eight SVP.  Do you not have anything a little more – a little closer to that job, something in a retail department store, or is the [M]anager, [D]epartment – the [M]anager title just not appropriate according to the [DOT]?

12

[VE:]     I will take a look at that.  I know, I used to work in a bakery, so I know that's actually more like medium.  Let me take a look at this other code here. Okay.  I'm thinking that it's still – hold on a moment. Okay.  This one is still an [SVP of] eight, but it's medium, so this might better fit.  It's [B]akery [S]upervisor, [DOT] code] 526.131-010, SVP of 8, and medium.

[ALJ:]     Okay.  And in terms of the SVP, as it was actually performed, what would your estimation be on that?

[VE:]     I am not sure about that.

[ALJ:]     How long would – do you think that it would take to learn the job of a bakery department manager?

[VE:]     Well, the SVP is eight, is four to ten years. So I'm really – I'm thinking maybe a six would be more appropriate, because that would be like a one to two-year.  And working at a bakery is a lot to consider. You have to know a lot about making sure the directions are followed about bread, and whatever it is you're producing there.  So it still takes some skill.

. . .

[ALJ:]     In her work, did [Plaintiff] acquire any skills transferable to sedentary work?

[VE:]     Let's see.  The [D]epartment [M]anager position would have, according to the [DOT], some – a transferable skill of like working with the public, and sustained people [sic] with information that might be sedentary work.

[ALJ:]     In terms of working with the public, that obviously is something that one does require – acquire, even from unskilled work, is there a particular type of skill involved in working with the public that would be transferable to jobs within the second hypothetical?

[VE:]     The jobs that I've cited in the second hypothetical, is that what you're saying, ma'am?

13

[ALJ:] Are there sedentary jobs that – well, I said, in the second hypothetical, can sit up to 60 minutes at a time. Can stand up to 30 minutes. Are there sedentary jobs within that hypothetical to which skills would be transferable?

[VE:] I had identified three jobs that <u>might</u> have some transferability <u>from the department manager job</u>. Would you like those three?

[ALJ:] Yes, please.

[VE:] Okay. Appointment [C]lerk, [<u>DOT</u>] code 237.367-010, that is an SVP of 3, sedentary exertion, and approximately 73,000 average jobs in the national economy. Referral and [I]nformation [A]ide, [<u>DOT</u> code] 237.367-042, SVP of 3, sedentary, approximately 73,000 average jobs in the national economy. And [S]cheduler, [<u>DOT</u> code] 238.367-034, SVP of 3, sedentary, and approximately 73,000 average jobs in the national economy.

(Tr. 1119-23 (emphasis added).)

In turn, the ALJ found at step four of the SEP that "[Plaintiff] had [PRW] as a [F]ront [D]esk [C]lerk and as a [B]akery [S]upervisor" but did <u>not</u> include the job the VE characterized as "Department Manager" in Plaintiff's PRW. (Tr. 1050.) At step five, the ALJ found "[Plaintiff] ha[d] acquired work skills from [PRW]," and purportedly based that finding on "[t]he [VE's] testi[mony] that [Plaintiff]'s [PRW] as a <u>Bakery Supervisor</u> was skilled, was classified as having a[n SVP] code of 6, and required the following skills: provide information to customers" (Tr. 1051).

As the above-emphasized language makes clear, the VE testified that Plaintiff's PRW as a <u>Department Manager</u> provided

14

Plaintiff with the transferable skill of "working with the public" and did not identify _any_ transferable skills arising from Plaintiff's PRW as a Bakery Supervisor (or as a Front Desk Clerk). (Tr. 1122.) Accordingly, no vocational evidence of record supports the ALJ's finding that Plaintiff acquired transferable skills from her PRW as a Bakery Supervisor (see Tr. 1050), let alone skills that would transfer to the three semi-skilled jobs to which the VE testified (see Tr. 1123).

The Commissioner deems "the mere fact that the ALJ did not identify Plaintiff's [D]epartment [Ma]anager [job] . . . as [PRW] in h[er] decision [] irrelevant," because "[t]he VE['s] testimony unequivocally confirms that Plaintiff's [D]epartment [M]anager job also qualifies as [PRW]." (Docket Entry 17 at 6-7 (citing Tr. 1119-20).) However, the Commissioner's argument oversimplifies the ALJ's error – the ALJ did not merely neglect to include Plaintiff's prior work as a "Department Manager" among her PRW at step four but then otherwise correctly analyze the VE's testimony at step five. Rather, the ALJ omitted the Department Manager job from Plaintiff's PRW (see Tr. 1050), despite the VE's testimony including that job in Plaintiff's PRW (see Tr. 1119), and neglected to provide any explanation for the omission (see Tr. 1050).[6]

---

[6] The exchange between the ALJ and the VE at the hearing reveals that the ALJ doubted whether the VE properly classified Plaintiff's prior job as the bakery department manager at Walmart as the Manager, Bakery job in the DOT, because the DOT rated that job at the sedentary level of exertion and at SVP 8 (over four years and up to and including 10 years to learn the job, see DOT, App'x C

Notably, the ALJ then additionally attempted to bootstrap the VE's testimony regarding transferable skills from the Department Manager job to the Bakery Supervisor job, without any accompanying explanation or justification for doing so. (See Tr. 1051.)[7] That combination of errors by the ALJ render her finding at step five that Plaintiff acquired work skills that transferred to other semi-skilled jobs in significant numbers nationally unsupported by substantial evidence, warranting remand.

2.    Transferable Skills Involving the Public and/or Customers

Plaintiff additionally maintains "that 'dealing with the public and providing information to customers' – the skill which the ALJ found transferable to semi-skilled sedentary jobs in the economy – is not a skill, but rather a trait of the job." (Docket

_____

("Components of the Definition Trailer"), § II ("Specific Vocational Preparation"), 1991 WL 699702 (G.P.O. 4th ed. rev. 1991)). (See Tr. 1119-20.) Those circumstances strongly suggest that the ALJ omitted the Department Manager job from Plaintiff's PRW because the ALJ also doubted whether the VE properly classified Plaintiff's prior work as the department manager for the impulse department at Walmart as the Manager, Department job in the DOT which, according to the VE, carried an SVP of 7 (over two years up to and including four years to learn the job, see DOT, App'x C, § II, 1991 WL 699702)) (see Tr. 1119).

[7] The DOT's job descriptions for Department Manager and Bakery Supervisor each contain a cross-reference to the Guide for Occupational Exploration ("GOE"). See DOT, No. 299.137-010 (Manager, Department), 1991 WL 672616 (cross-referencing GOE § 11.11.05); DOT, No. 526.131-010 (Bakery Supervisor), 1991 WL 674471 (cross-referencing GOE § 6.01.01). The GOE categorizes the Department Manager job as part of the "Leading-Influencing" group and "Business Management" subgroup of occupations, and the "skills and abilities . . . need[ed] for th[at] kind of work" include "deal[ing] with the general public[ and] customers[] with tact and courtesy." GOE, 310-13 (U.S. DOL 1979). In contrast, the GOE places the Bakery Supervisor job in the "Industrial" group and "Production Technology" subgroup of occupations, and the "skills and abilities . . . need[ed] for th[at] kind of work" do not include working with (or providing information to) the public. GOE, 136-40. These differences underscore the significance of the ALJ's error in attributing, without accompanying explanation, transferable skills from the Department Manager job to the Bakery Supervisor job.

Entry 11 at 6 (internal citation omitted) (quoting Tr. 1051).) In support of that argument, Plaintiff points to what she deems "the ALJ's "skepticism" (id. at 7) at the hearing that dealing with the public/providing information to customers constituted a skill, because she "acknowledge[ed] that [working with the public] was something an individual could be required to do as part of an unskilled job" (id. at 6 (citing Tr. 1122)). Plaintiff notes that "[t]he VE d[id] not the[reafter] explain how there is a particular type of skill related to working with the public that is transferable to the jobs of [A]ppointment [C]lerk, [Referral and I]nformation [A]ide and [S]cheduler." (Id. at 7 (citing Tr. 1123).) According to Plaintiff, "individuals working in many unskilled jobs provide information to customers," and "[i]t does not take an individual more than 30 days to learn how to provide information to customers . . . particularly [] when the information is not specialized in any way." (Id. (internal quotation marks omitted) (citing, inter alia, Program Operations Manual System ("POMS"), § DI 25015.017(C)(2) (deeming "[a]nswering a standard telephone" and "[g]reeting customers" as "[u]nskilled [t]asks")).) Plaintiff's arguments in this regard fail to carry the day.

The SSA defines a "skill" as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled

17

level (requires more than 30 days to learn)." Social Security Ruling 82-41, <u>Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979</u>, 1982 WL 31389, at *2 (1982) ("SSR 82-41"). That Ruling differentiates skills and worker traits by noting that skills involve "experience and demonstrated proficiency with work activities <u>in particular tasks or jobs</u>," <u>id.</u> at *3 (emphasis added), as well as the "practical and familiar knowledge of the principles and processes of an art, science or trade, <u>combined with the ability to apply them in practice in a proper and approved manner,</u>" <u>id.</u> at *2. SSR 82-41 further emphasizes that descriptive terms, such as "alertness and close attention" and "coordination and dexterity" contained in the regulations' definition of semi-skilled jobs, do not "illustrate types of skills, in and of themselves," but rather "describe worker traits (aptitudes or abilities)." <u>Id.</u> (citing 20 C.F.R. § 404.1568(b)). Thus, "[w]orker traits to be relevant <u>must have been used in connection with a work activity</u>," and "the acquired capacity to <u>perform the work activities with facility</u> (rather than the traits themselves) gives rise to potentially transferable skills." <u>Id.</u> (emphasis added); <u>see also</u> <u>Draegert v. Barnhart</u>, 311 F.3d 468, 476 (2d Cir. 2002) (noting that "generalized abilities . . . <u>not linked to any particular tasks</u>[] are merely traits or aptitudes, not job skills" (emphasis added)); <u>Anglin v. Massanari</u>,

18

18 F. App'x 551, 553 (9th Cir. 2001) (defining trait as "an inclination, a natural ability, talent, or capacity for learning" (citing Webster's New World Dictionary 68 (3d ed. 1998)); Ingles v. Heckler, 763 F.2d 169, 170 (4th Cir. 1985) (per curiam) (deeming "basic abilities to read, write, and count [] not skills," because they "were not acquired through work experience or through education providing for direct entry into skilled work" (emphasis added)); Weaver v. Secretary of Health & Human Servs., 722 F.2d 310, 311–12 (6th Cir. 1983) (defining skills as "learned abilities" and "aptitudes" as "innate abilities" (emphasis added)).

In light of Plaintiff's vocational information regarding her past work and the above-referenced authority, the Court should conclude that the ALJ did not err by treating dealing with the public and/or providing information to customers as possible transferable skills. (See Tr. 1051.)[8] Plaintiff's Work History Report reflects that she worked at Walmart as a department manager from June 1997 to August 2010, a period of over 13 years. (See Tr. 204-05.) In that job, Plaintiff indicated that her duties involved "customer service[,] stocking, merchand[is]ing, ordering, cleaning, [and] inventory." (Tr. 205 (emphasis added).) Moreover, Plaintiff's reliance on POMS falls short, because providing "service" to customers at a managerial level involves more skill

---

[8] As discussed above, the Court should find, however, that the ALJ erred by finding that Plaintiff acquired such skills from the Bakery Supervisor job. (See Tr. 1051.)

than the "unskilled task" of simply "greeting" customers. (<u>See</u> <u>id.</u> at 7 (citing POMS, § DI 25015.017(C)(2)).)

In a persuasively reasoned case, the United States Court of Appeals for the Sixth Circuit rejected the plaintiff's argument that "abilities [such as dealing with the public we]re not sufficiently complicated to rise to the level of a skill[, because] they encompass an inherent sociability that a worker either has or lacks," explaining as follows:

> This argument fails on its own terms. While a person may be innately gregarious, this does not necessarily mean that she will be effective at dealing with the public, delivering information, or operating the telephone. It is not difficult to imagine a sociable person performing these duties in a lackluster fashion.
>
> Moreover, a substantial amount of authority undermines [the plaintiff's] argument. In <u>Atwater v. Astrue</u>, for example, the Second Circuit affirmed the denial of disability benefits based on a finding of transferability where the claimant's "past employment involved clerical duties, light typing, filing, answering the phone, <u>providing information to callers, and directing people to assistance</u>." 512 [F. App'x] 67, 69 (2d Cir. 2013). Numerous other decisions within th[e Sixth] Circuit and elsewhere have reached similar outcomes. <u>See, e.g.</u>, <u>Kyle[ v. Commissioner of Soc. Sec.</u>, 609 F.3d 847, 857 (6th Cir. 2010]) (referencing "the learned skill of <u>interacting with people</u>"); <u>Deneweth v. Astrue</u>, No. 10–11657, 2010 WL 5330490, at *1 (E.D. Mich. Dec. 21, 2010) [(unpublished)] (upholding the ALJ's determination that the claimant, who suffered from advanced arthritis in her right knee, "acquired skills transferable to sedentary work such as <u>public contact</u>, office administration, data entry, phone answering, general clerical, and record keeping"); <u>Bjornholm v. Shalala</u>, 39 F.3d 888, 890 (8th Cir. 1994) (holding that the claimant's abilities "to handle money, to <u>deal with the public</u>, and to record routine information" in her prior job as a waitress were transferable skills); <u>Loy</u>

20

> v. Sec[retar]y of Health & Human Servs., 901 F.2d 1306,
> 1309–10 (6th Cir. 1990) (holding that "dealing with
> customers" was a transferable skill); . . . Taylor v.
> Sec[retar]y of Health & Human Servs., [] No. 89–1260,
> [891 F.2d 292 (table)], 1989 WL 150763, at *4 (6th Cir.
> Dec. 14, 1989) (unpublished []) (holding that the
> ability to "deal with the general public" was a
> transferable skill).

Harris v. Commissioner of Soc. Sec., 598 F. App'x 355, 363 (6th Cir. 2015) (emphasis added); see also Janeczek v. Commissioner of Soc. Sec., No. 1:18CV629, 2018 WL 6419995, at *3 (W.D. Mich. Dec. 6, 2018) (unpublished) (relying on Harris to reject the plaintiff's argument that ability to deal with public did not constitute skill); Joy R. v. Commissioner of Soc. Sec., No. 5:17CV66, 2018 WL 6191036, at *4 (D. Vt. Nov. 28, 2018) (unpublished) (finding that, "[t]aken out of any practical context, a generic aptitude for dealing with [the] public would not constitute a transferrable job skill," but holding that, in the plaintiff's case, "the VE's testimony contemplate[d] more than a generic social or communication ability," because the plaintiff's duties of "communicating information to people and receiving office visitors [we]re specific work activities that require[d] dealing with the public"); Huff v. Shalala, No. 1:91CV499, 1994 WL 776889, at *4 (S.D. Miss. Sept. 30, 1994) (unpublished) (determining that "the ability to deal with the public is more fairly described as a skill, having been acquired through performance of an occupation

which is above the unskilled level" (internal quotation marks omitted)).

In Plaintiff's Reply, she argues that, even if dealing with the public and/or providing information to customers qualify as a transferable skill, "the ALJ's decision still cannot be upheld by this Court" (Docket Entry 18 at 3), because none of the jobs cited by the VE (and adopted by the ALJ) "require supervisory skills to which the 'supervisory' skills from the work classified as 'department manager' would transfer" (id. at 4 (responding to Commissioner's argument that "[s]upervisory skills are highly likely to transfer to other sedentary or light work" (Docket Entry 17 at 8 (internal citation omitted))). Plaintiff further contends "that th[e] jobs [cited by the VE and adopted by the ALJ] bear little to no resemblance to the duties involved in [Plaintiff]'s past work." (Id.)

Although Plaintiff would have acquired the skills of dealing with the public and/or providing information to customers while working in a managerial capacity for Walmart, SSA policy does not require that the jobs to which those skills transfer must also qualify as "supervisory" or involve "supervisory" skills. See SSR 82-41, 1982 WL 31389, at *5 (noting that, "transferability is . . . most probable and meaningful among jobs in which[ ] the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed"

22

(emphasis added)). Furthermore, despite Plaintiff's observation
that the jobs of Appointment Clerk, Referral and Information Aide
and Scheduler "bear little to no resemblance to the duties involved
in [Plaintiff]'s past work" (Docket Entry 18 at 4), "where job
skills have universal applicability across industry lines, e.g.,
clerical, professional, administrative, or managerial types of
jobs, transferability of skills to industries differing from past
work experience can usually be accomplished with very little, if
any, vocational adjustment where jobs with similar skills can be
identified as being within an individual's RFC," SSR 82-41, 1982
WL 31389, at *6 (emphasis added).

In short, Plaintiff has not shown error with respect to the
ALJ's finding that dealing with the public and/or providing
information to customers could constitute transferable skills in
this case.

3. Department Manager Job as PRW

Lastly, Plaintiff contends that, although the VE classified
Plaintiff's previous work as the manager of the impulse department
at Walmart as the DOT job "Department Manager" and testified that
such job provided the transferable skills of dealing with the
public and/or providing information to customers, "the VE likely
misclassified th[at] work," as "there [wa]s little indication from
either [Plaintiff's] testimony or [her W]ork [H]istory [R]eport
that she was engaged in providing information to customers."

23

(Docket Entry 11 at 8 (citing Tr. 205, 1085-86).) Plaintiff additionally points out that "Disability Determination Services ('DDS') classified [Plaintiff's prior work as a manager at Walmart] as a composite job with significant elements from two or more occupations that did not have a [<u>DOT</u>] counterpart – manager at retail store and stock clerk – [and] also found that [Plaintiff] did not have transferable skills from th[at] job." (<u>Id.</u> (citing Tr. 96-97); <u>see also</u> Docket Entry 18 at 1.) Plaintiff's contentions miss the mark.

As discussed above, Plaintiff indicated on a Work History Report that her duties as a department manager at Walmart involved "<u>customer service</u>[,] stocking, merchand[is]ing, ordering, cleaning, [and] inventory." (Tr. 205 (emphasis added).) Plaintiff's inclusion of "customer service" as a duty of that prior job (and especially as the <u>first</u> such listed duty (<u>see</u> Tr. 205)) undercuts her argument that "there is little indication from . . . her [W]ork [H]istory [R]eport that she was engaged in providing information to customers" (Docket Entry 11 at 8). Moreover, Plaintiff did not provide any testimony contradicting her earlier statement on the Work History Report that her job involved customer service (<u>see</u> Tr. 1085-87, 1116).

Contrary to Plaintiff's assertions, DDS's determination that Plaintiff's prior work at Walmart qualified as a composite of two different <u>DOT</u> jobs and provided no transferable skills (<u>see</u> Tr.

24

96-97) does not compel the conclusion that the ALJ erred by relying instead on the VE's testimony.  Notably, the VE had the benefit of Plaintiff's hearing testimony expounding on the duties of her past work at Walmart (see Tr. 1085-87, 1116), which DDS personnel lacked.  Furthermore, where "the record contain[s] substantial evidence that will support two contrary conclusions," Wines v. Commissioner of Soc. Sec., 268 F. Supp. 2d 954, 960 (N.D. Ohio 2003), the ALJ (and not the Court) bears the responsibility to resolve conflicts in the record, see Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

Simply put, Plaintiff's third issue on review fails as a matter of law.

### III.  CONCLUSION

Plaintiff has established errors warranting remand.[9]

_____

[9] Plaintiff's Memorandum asks for "summary judgment in her favor with reversal of the ALJ's decision for an award of benefits, or alternatively, with a remand of the matter for a new hearing."  (Docket Entry 11 at 8.)  In support of her argument for reversal with an award of benefits, Plaintiff maintains that Plaintiff's "claim for [DIB] should have been approved pursuant to [Rule 201.14 of] the [G]rids as she had an RFC for sedentary work, was 50 years old as of the [amended] alleged onset date of November 28, 2011 (and 54 years old at the date last insured of December 31, 2015), has a high school education, is unable to perform her PRW as a [B]akery [S[upervisor and [F]ront [D]esk [C]lerk and possesses no transferable skills from those two jobs to a sedentary job."  (Id. at 6.)  The Court should opt for remand because, as discussed above, the record does not conclusively foreclose the possibility that Plaintiff acquired transferable skills from her PRW.

25

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to include reevaluation of Plaintiff's PRW and whether she acquired any skills from her previous work that would transfer to other jobs within her RFC that exist in significant numbers in the national economy. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be granted in part, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 21, 2020